# EXHIBIT A



# Tarrant County District Clerk Online
## Thomas A. Wilder, District Clerk

Civil Case and Transaction Information                         01/03/2024 1:24 PM

**Court :** 048 ∨ **Case :** 349030   [ Search ]   [ New Search ]   **Show Service Documents ONLY**

**Cause Number : 048-349030-23**                          **Date Filed : 12-28-2023**

DIANNE DORMAN | **VS** | U.S. BANK NATIONAL ASSOCIATION
AS TRUSTEE FOR THE HOLDERS OF

**Cause of Action :** REAL PROPERTY, OTHER PROPERTY
**Case Status :** PENDING

| File Mark | Description | | Assessed Fee | Credit/Paid Fee |
|---|---|---|---|---|
| 12-28-2023 | PLTF'S VERIFIED ORIG PET, NOT OF AUTOMATIC STAY UNDER R 736.11, APPL FOR TRO ORD, &amp; FOR INJ RELIEF | N | $350.00 | |
| 12-28-2023 | PAYMENT RECEIVED trans #1 | Y | | $213.00 |
| 12-28-2023 | PAYMENT PAID TO STATE trans #1 | Y | | $137.00 |

# EXHIBIT B

# EXHIBIT B-1

FILED
TARRANT COUNTY
12/28/2023 11:52 AM
THOMAS A. WILDER
DISTRICT CLERK

Cause No. _____ 048-349030-23

| | | |
|---|---|---|
| DIANNE DORMAN, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| U.S. BANK NATIONAL ASSOCIATION AS | § | TARRANT COUNTY, TEXAS |
| TRUSTEE FOR THE HOLDERS OF THE | § | |
| CITIGROUP MORTGAGE LOAN TRUST | § | |
| INC. ASSET-BACK PASS-THROUGH | § | |
| CERTIFICATES SERIES 2005-HE3 and | § | |
| SHELLPOINT MORTGAGE SERVICING, | § | |
| | § | |
| Defendant(s). | § | ____ JUDICIAL DISTRICT |

**PLAINTIFF'S VERIFIED ORIGINAL PETITION, NOTICE OF
AUTOMATIC STAY UNDER RULE 736.11, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND FOR INJUNCTIVE RELIEF**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Dianne Dorman, ("Plaintiff(s)"), and serves this, Plaintiff's Original Petition against Defendants, DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-NCI, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-NCI and PHH MORTGAGE CORPORATION ("Defendant(s)"), and in support thereof, would respectfully show the Court as follows:

I.
Discovery Level

1. Discovery of this matter shall be conducted pursuant to Level 3 pursuant to Rule 190.4 of the

   Texas Rules of Civil Procedure.

II.
Parties

2. Plaintiff, Dianne Dorman is the owner of the residence located at 100 Ascot Dr., Southlake,

   Texas 76092 (the Residence).  Plaintiffs may receive all correspondence and filings via their

   attorney of record herein.

3. Defendant, DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-NCI, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-NCI is a trust for holding mortgage-backed securities for which U.S. Bank National Association is the Trustee and conducts business in Tarrant County, Texas and is the current mortgagee per Defendant's publicly filed foreclosure notice. **Defendant does not have a registered agent listed and therefore may be served through the secretary of state.**

4. Defendant, PHH MORTGAGE CORPORATION is a mortgage servicer located at 1661 WORTHINGTON RD STE 100 C/O MAIL STO WEST PALM BEACH, FL 33409-6493 and conducts business in Tarrant County, Texas. **Defendant may be SERVED through its registered agent, CORPORATION SERVICE COMPANY DBA CSC - LAWYERS INCO at 211 E. 7TH STREET SUITE 620 AUSTIN, TX 78701.**

III.
Venue

5. Venue is proper in Tarrant County, Texas, as that all or a substantial part of the events or omissions giving rise to the claim occurred in Tarrant County, Texas and it involves real property located in Tarrant County, Texas.  Tex. Civ. Prac. & Rem. Code §15.002(a) and §15.011.

IV.
Facts

6. Dianne Dorman, Plaintiff, is the owner of the Residence located at 100 Ascot Dr., Southlake, Texas 76092, which is also plaintiff's homestead. (the "Residence").

2

7.  Ms. Dorman bought this house in 2005 with mostly cash for $345,000.00, but only needed a loan of $70,000.00. It is now worth about $980,000.00, conservatively.

8.  She did complete a Texas Home Equity Loan refinance a year later, raising her mortgage from $70,000.00 to $190,000.00.  She has not done another refinance or equity loan since.

9.  Up until earlier this year, Ms. Dorman was a corporate executive making very good money, but got into a tragic car accident that caused a brain injury, and she hasn't been able to get back to her previous job yet.  She is currently making about $80,000.00 per year on disability.

10. Ms. Dorman has been fighting with her lender for some time now.  Specifically, payments were sent in back in 2014 and 2015 that have never been applied to her loan.  There are also inconsistencies between what the Defendants reported to the IRS as being paid by Plaintiff and what Defendants have advised Plaintiff that she has paid. Specifically, Defendants have reported payments being made to the IRS but then claim that Plaintiff has not made those very same payments to Plaintiff.

11. Additionally, the lender placed insurance on her mortgage when she was already paying for her homeowner's insurance and taxes, per her contract with the lender. She never received any notice that this was going to happen before it had already turned into a big problem for her.

12. Defendants are also now claiming that she owes them $700,000.00, which is impossible by Plaintiff's calculations, and which is why Plaintiff is requesting that an accounting be ordered. This is especially concerning since in 2016, after winning an adversary proceeding in bankruptcy against her lender at the time, she was advised she owed $185,000.00.

3

13. Ms. Dorman never received a 20-Day Notice to Cure, nor did she received a Notice of Acceleration advising her of the January 2nd, 2024 foreclosure date. She only found out about it because of Investors wanting to buy her home.

14. Ms. Dorman should owe approximately $180,000.00, despite Defendant's claim that she owes $700,000.00. Since her home is worth approximately $980,000.00, she has approximately $800,000.00 in equity that she could lose if her home is allowed to go to foreclosure.

15. All facts stated herein are verified under penalty of perjury per the signed unsworn verification block below.

V.
Causes of Action

**A.** ***Automatic Stay and Dismissal if Independent Suit Filed***

16. All facts and allegations set forth above are incorporated by reference herein for all purposes.

17. Texas Rules of Civil Procedure 736.11 (a)-(e) "Automatic Stay and Dismissal if Independent Suit Filed" states, in pertinent part, as follows (emphasis added):

a. "A proceeding or order under this rule is *automatically stayed* if a respondent files a separate, original proceeding in a court of competent jurisdiction that *puts in issue any matter* related to the origination, servicing, or enforcement of the loan agreement, contract, or lien *sought to be foreclosed prior to 5:00 p.m. on the Monday before the scheduled foreclosure sale.*"

4

b. "Respondent must give prompt notice of the filing of the suit to petitioner or petitioner's attorney and the foreclosure trustee or substitute trustee by any reasonable means necessary to stop the scheduled foreclosure sale."

c. "Within ten days of filing suit, the respondent must file a motion and proposed order to dismiss or vacate with the clerk of the court in which the application was filed giving notice that respondent has filed an original proceeding. ... If an order has been signed, the court *must vacate* the Rule 736 order."

d. "If the automatic stay under this rule is in effect, any foreclosure sale of the property is void."

18. As stated above, Defendant filed its application to foreclose on the underlying subject property of this action and was granted an order under Cause No. 153-345587-23 under Rule 736 to proceed with foreclosure.

19. Respondent, now Plaintiff in this petition, now files this, a separate original proceeding in this court, which is a court of competent jurisdiction.

20. This petition, as is evidenced from the facts above and attached, and from the arguments herein, puts in issue matters related to the servicing and enforcement of the contract and loan agreement which is the subject of this litigation and of the Order issued under Rule 736 in Cause No. 153-345587-23.

21. Therefore, as per TRCP 736.11 (a) and (c), the order issued under the above noted cause number, and the resulting foreclosure scheduled to proceed on January 2nd, 2024 in Tarrant County must be automatically stayed and, upon prompt notice to the Defendant and timely

5

filing of a motion and proposed order in the Defendant's original proceeding, the Court must vacate the Defendant's Rule 736 order.

22. Plaintiff humbly requests that the court, if needed, declare that an automatic stay be immediately in effect on the Order in Cause No. 153-345587-23 and issue an order to vacate that judgment upon prompt notice to the Defendant and a timely filing of a motion and proposed order in the Defendant's Rule 736 case.

**B.      *Temporary Restraining Order and Injunctive Relief***

23. All facts and allegations set forth above are incorporated by reference herein for all purposes.

24. Defendants, by foreclosing on the Property will cause Plaintiff to suffer imminent harm and irreparable injury and must be stopped by a temporary restraining order and ultimately a permanent injunction.

25. It is essential that the Court immediately and temporarily restrain Defendants from foreclosing on the Property, scheduled for sale on January 2nd, 2024.  It is essential that the court act immediately, prior to notice on Defendants and a hearing on the matter, as the date of the foreclosure sale is imminent and no amount of money will adequately compensate Plaintiff for the loss of the Residence.

26. For the reasons stated in this pleading, Plaintiff requests that, after final trial of this matter, the Court permanently enjoin Defendants from continuing to violate Plaintiff's rights by ceasing and desisting all foreclosure activity.

27. As shown by the facts plead herein, Plaintiff has a probable right to relief against Defendants because Defendant has committed violations of the Texas Property Code, including that the

6

<u>lender or lender's servicer did mail the notice to cure or the notice of acceleration via certified mail, return receipt requested; Defendants have violated that TDCA; and Defendants have violated Regulation X.</u>

**C.     *20-Day Notice to Cure AND Notice of Acceleration Not Sent to Plaintiff***

28. All facts and allegations set forth above are incorporated by reference herein for all purposes.

29. The power of acceleration is a harsh remedy and calls for close scrutiny. *See Vaughan v. Crown Plumbing & Sewer Serv., Inc., 523 S.W. 2d 72, 75 (Tex. Civ. App. – Houston (1st Dist.) 1975, writ ref'd n.r.e.).* The exercise of the right of acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration. *Shumway v. Horizon Credit Corp., 801 S.W.2d 890, 892 (Tex. 1991); and see Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 569–570 (Tex. 2001).* Both notices must be "clear and unequivocal". *Id. at 893 and 566.* Finally, whether the right of acceleration was exercised is a fact question. *Holy Cross Church of God v. Wolf at 568.*

30. Under Texas Property Code Chapter 51 any debtor who, according to the records of the mortgage servicer, is obligated to pay the debt must be served with a valid and correct written notice to cure and notice of the trustee's sale by certified mail. See *Tex. Prop. Code § 51.002.*

31. Failure to give the required notices is sufficient to cause a court to set aside the foreclosure sale. See *Bauder v. Alegria,* 480 S.W.3d 92, 98 & n.8 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Shearer v. Allied Live Oak Bank,* 758 S.W.2d 940, 942 (Tex. App.—Corpus Christi 1988, writ denied).

7

32. In the case of a contractual lien on real property used as the debtor's residence, the debtor is entitled to a 20-day window of opportunity to cure any default before the mortgage servicer may provide notice of sale of the residence. *Tex. Prop. Code Sect. 51.002.* Accordingly, the mortgage servicer must provide written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien, and must give the debtor at least 20 days to cure the default before a subsequent notice of sale can be given [*Tex. Prop. Code § 51.002(d)*; *Bauder v. Alegria, 480 S.W.3d 92, 97–98 & n.8 (Tex. App.—Houston [14th Dist.] 2015, no pet.)* (when notice to cure and notice of foreclosure were sent to wrong address, trial court properly set aside foreclosure sale).

33. Therefore, because the 20-day notice to cure NOR the 21 day notice of acceleration were not received by Plaintiff, Plaintiff alleges that they was not sent, according to the Plaintiff's sworn testimony herein, Plaintiff seeks declaratory relief that Defendant/Lender is not entitled to foreclose and requests that this court grant the request for a Temporary Restraining Order.

**D.     *Declaratory Judgment***

34. All facts and allegations set forth above are incorporated by reference herein for all purposes.

35. As described above, and shown by the attached Exhibits, Defendant failed to provide proper notice of the January 2nd, 2024, foreclosure sale. The Plaintiff requests that the Court declare that any attempt to foreclose is a violation of Texas Property Code Sec. 51.001 et seq. and that the January 2nd, 2024 foreclosure proceeding by the Defendant be ceased.

**E.     *TDCA Violations***

36. All facts and allegations set forth above are incorporated by reference herein for all purposes.

37. The Texas Debt Collection Act (the "TDCA") is the Texas counterpart to the Federal Debt Collect Practices Act (the "FDCPA") and is found at TEX. FIN. CODE § 392.001 et. Seq.

38. The TDCA provides remedies for wrongful debt collection practices used by a debt collector in debt collection. See Tex. Fin. Code§§ 392.001-.404; see also Ford v. City State Bank of Palacios, 44 S.W.3d 121, 135 (Tex. App.-Corpus Christi 2001, no pet.).

39. "Debt collection" is defined as the act or practice "in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." Tex. Fin. Code § 392.001(5).

40. Defendants violated the TDCA. See Tex. Fin. Code § 392.001 et seq.

41. To state a claim for a TDCA violation, the plaintiff is required to show that the defendant: (1) is a debt collector; (2) committed a wrongful act in violation of Tex. Fin. Code § 392.01 et seq.; (3) against the plaintiff; and (4) as a result, the plaintiff was injured. See McCaig v. Wells Fargo Bank (Texas), NA., 788 F.3d 463, 480-81 (5th Cir. 2015) ("[t]he statutory text [of the TDCA] contains no intent requirement . . . as suggested by the statute's plain text, district courts have recognized that facially innocuous misrepresentations made in the course of an attempt to collect a debt constitute a violation of [the TDCA ]."); see also Catherman v. First State Bank, 796 S.W.2d 299, 302 (Tex. App.-Austin 1990, no writ).

42. The debt in question relating to Plaintiffs' home is a "consumer debt" within the meaning of such statute because the debt is an obligation for personal, family, or household purposes. Tex. Fin. Code § 392.001(1), (2). Furthermore, Plaintiffs are "consumers" within the meaning of Tex. Fin. Code § 392.001.

43. A "debt collector" is "a person who directly or indirectly engages in debt collection." Id. § 392.001(6). This definition also includes a mortgage servicer. See Miller v. BAC Home Loans Servicing, LP, 726 F.3d 717, 723 (5th Cir. 2013). Defendants, therefore, are debt collectors.

44. Defendants' acts and omissions as alleged supra constitute TDCA violations. The TDCA provides that, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices:

    a.    (8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding. Tex. Fin. Code Ann. § 392.304(a)(8).

    b.    (19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer. Tex. Fin. Code § 392.304(a)(19).

45. Section 392.304(a)(19) is a catch-all provision that prohibits debt collectors from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Birchler v. JPMorgan Chase Bank*, No. 4:14-CV-81-ALM, 2015 WL 1939438, at *5 (E.D. Tex. Apr. 29, 2015). Plaintiffs maintain that Defendants violated § 392.304(a)(19) when it falsely advised plaintiff that the 18 payments under forbearance would be tacked onto the end of the loan once the forbearance period had concluded.

46. The Fifth Circuit Court of Appeals has acknowledged that even if a loan is in default, a lender may still violate § 392.301(a)(8). "In determining whether foreclosure would be prohibited by law, however, what matters is whether the mortgagor has a right to foreclose, not whether the

10

debt is considered in default." *McCaig v. Wells Fargo Bank (Texas), NA.*, 788 F.3d 463, 478 (5th Cir. 2015).

47. The Supreme Court of Texas has also opined that a party can recover injunctive relief and actual damages that are a "reasonably foreseeable result of the wrongdoer's conduct." Brown v. Oaklawn Bank, 718 S.W.2d 678, 680 (Tex. 1986). The Northern District has noted "that Brown suggests that the harm claimed must have been merely a 'reasonably foreseeable result' of alleged misconduct under the TDCA [but] it does not require that the harm be the sole result of a defendant's acts." Clark v. Deutsche Bank Nat'l Tr. Co., 3:14-CV-3590-B, 2016 WL 931216, at *7 (N.D. Tex. Mar. 11, 2016)(emphasis added). Thus, the causation standard for a TDCA violation is akin to the "producing cause" standard set forth in the Deceptive Trade Practices Act. See Tex. Bus. & Com. Code § 17.S0(a); Prudential Ins. Co. of Am. v. Jefferson Associates, Ltd., 896 S.W.2d 156, 161 (Tex. 1995).

48. Actual damages recoverable under the TDCA include damages for mental anguish and do not first require a showing of physical injury. Ledisco Fin. Servs. v. Viracola, 533 S.W.2d 951, 957 (Tex. App.-Texarkana 1976, no writ.); Monroe v. Frank, 936 S.W.2d 654, 661 (Tex. App.- Dallas 1996, writ dism'd).

49. Also, pursuant to Tex. Fin. Code § 392.403, Plaintiff is entitled to recover his attorneys' fees reasonably related to the amount of work performed and costs for all actions in the trial court and on appeal.

50. As a result of Defendants' TDCA violations, Plaintiff suffered severe mental anguish and emotional distress. Plaintiff is constantly worried and confused about the status of the loan.

They also lost time away from work and suffered the inconvenience of having to resolve the matter. Therefore the court should order that Defendants violated the TDCA through their servicing of the loan and their attempted wrongful foreclosure and should be restrained from proceeding with foreclosure.

**F.    *Violation of RESPA Regulation X – Sec. 1024.37 Force-placed insurance***

51. All facts and allegations set forth above are incorporated by reference herein for all purposes.

52. Regulation X – Section 1024.37 regulates when and how a lender or servicer may obtain hazard insurance on behalf of the borrower.

53. Section (b) states: "A servicer may not assess on a borrower a premium charge or fee related to force-placed insurance unless the servicer has a reasonable basis to believe that the borrower has failed to comply with the mortgage loan contract's requirement to maintain hazard insurance."

54. Further, under section (c)(1), the servicer or lender must:

a.    "(i) Deliver to a borrower or place in the mail a written notice containing the information required by paragraph (c)(2) of this section at least 45 days before a servicer assesses on a borrower such charge or fee;

b.    (ii) Deliver to the borrower or place in the mail a written notice in accordance with paragraph (d)(1) of this section; and

c.    (iii) By the end of the 15-day period beginning on the date the written notice described in paragraph (c)(1)(ii) of this section was delivered to the borrower or placed in the mail, not have received, from the borrower or otherwise, evidence demonstrating that the

borrower has had in place, continuously, hazard insurance coverage that complies with the loan contract's requirements to maintain hazard insurance."

55. As alleged and inferred from the facts supporting this petition, the Defendants did not comply with the requirements of the above noted section by providing Plaintiff with any of the required notices or reminders.  In fact, had they, they would have been advised that Plaintiff already had insurance on the property.

56. This force-placed insurance is a major contributing factor to Plaintiff's default, and because of that, Plaintiff humbly requests that the January 2nd, 2024 foreclosure be canceled.

VI.
Remedies and Damages

*Accounting*

57. A request for an accounting is an equitable remedy used to determine the amount of damages. *See Hutchings v. Chevron U.S.A., Inc.,* 862 S.W.2d 752, 762 (Tex. App.-El Paso 1993, writ denied). ***It is a flexible, equitable remedy that may apply in various scenarios according to the sound discretion of the trial court.*** *See, e.g., Gifford v. Gabbard,* 305 S.W.2d 668, 672 (Tex. Civ. App.-El Paso 1957, no writ); *Southwest Livestock & Trucking Co.,* 884 S.W.2d 805, 810 (Tex. App.-San Antonio 1994, writ denied).

58. Plaintiff requests an Order for an accounting of all transactions on the mortgage loan.

13

*Attorney's Fees*

59. Based upon the foregoing, Plaintiff requests recovery from Defendants, pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code, as well as pursuant to several laws cited and quoted above, for all costs and reasonable and necessary attorneys' fees incurred herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems necessary and just.

VII.
Conditions Precedent

60. All conditions precedent to Plaintiff's recovery on all claims and damages have been performed or have occurred.

PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

a.   An order to vacate that judgment upon prompt notice to the Defendant and a timely filing of a motion and proposed order in the Defendant's Rule 736 case.

b.   A temporary restraining order be issued without notice to Defendants, restraining each from conducting the foreclosure sale currently scheduled for January 2nd, 2024;

c.   A temporary injunction be issued, after notice to Defendants and an evidentiary hearing, restraining Defendants from conducting a foreclosure sale during the pendency of this litigation; and

d.   A permanent injunction be issued, on final trial of this cause, enjoining Defendants from conducting a foreclosure and thereafter;

e.   A Declaratory Order that Defendant is not entitled to foreclose;

f.   Compensatory damages be awarded within the jurisdictional limits of the Court;

g.   Pre-judgment and post-judgment interest as provided by law;

h.   Exemplary damages as requested herein or as determined by the Court; and

i.   Such other and further relief, both general and special, to which Plaintiff may be justly entitled, whether at law or in equity.

14

Respectfully submitted,

LAW OFFICES OF Ryan Daniel

By:    /s/ Ryan Daniel
           Ryan Daniel
           State Bar No. 24090604
           1525 US Hwy 380, Suite 500 #102
           Frisco, TX 75033
           ryan@ryandaniellaw.com
           (469)-688-0621
           **ATTORNEY FOR PLAINTIFF**

**<u>VERIFICATION UNDER PENALTY OF PERJURY PER CPRC 132.001</u>**

My name is Dianne Dorman, my date of birth is April 2nd, 1971, and my address is

100 Ascot Dr., Southlake, Texas 76092. I declare under penalty of perjury that the facts stated

in this document are true and correct.

Executed in Tarrant County, State of Texas, on <u>27/12/2023</u> .

Dianne Dorman (Dec 27, 2023 18:32 CST)

15

## NOTICE OF FORECLOSURE SALE

ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OR ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.

1. *Property to Be Sold.* The property to be sold is described as follows: LOT 1, BLOCK 2, OF CHAPEL DOWNS, AN ADDITION TO THE CITY OF SOUTHLAKE, TARRANT COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN CABINET A, SLIDE 386, OF THE PLAT RECORDS OF TARRANT COUNTY, TEXAS.

2. *Instrument to be Foreclosed.* The instrument to be foreclosed is the Deed of Trust dated 09/08/2006 and recorded in Document D206296193 real property records of Tarrant County, Texas.

3. *Date, Time, and Place of Sale.* The sale is scheduled to be held at the following date, time, and place:

Date:            01/02/2024

Time:            10:00 AM

Place:.           Tarrant County, Texas at the following location: WEST SIDE OF THE BUILDING OF THE
                 TARRANT COUNTY COURTHOUSE OR AS DESIGNATED BY THE COUNTY
                 COMMISSIONER'S OFFICE or as designated by the County Commissioners Court.

4. *Terms of Sale.* The sale will be conducted as a public auction to the highest bidder for cash. Pursuant to the deed of trust, the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the property. Pursuant to section 51.009 of the Texas Property Code, the property will be sold in AS IS, WHERE IS condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the deed of trust.

5. *Obligations Secured.* The Deed of Trust executed by DIANNE L. DORMAN, provides that it secures the payment of the indebtedness in the original principal amount of $190,000.00, and obligations therein described including but not limited to (a) the promissory note; and (b) all renewals and extensions of the note. DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-NC1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-NC1 is the current mortgagee of the note and deed of trust and PHH MORTGAGE CORPORATION is mortgage servicer. A servicing agreement between the mortgagee, whose address is DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-NC1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-NC1 c/o PHH MORTGAGE CORPORATION, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 and the mortgage servicer and Texas Property Code § 51.0025 authorizes the mortgage servicer to collect the debt.

6. *Order to Foreclose.* DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-NC1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-NC1 obtained an Order from the 153rd District Court of Tarrant County on 11/15/2023 under Cause No. 153-345587-23. The mortgagee has requested a Substitute Trustee conduct this sale pursuant to the Court's Order.

7. *Substitute Trustee(s) Appointed to Conduct Sale.* In accordance with Texas Property Code Sec. 51.0076, the undersigned attorney for the mortgage servicer has named and appointed, and by these presents does name and appoint AVT Title Services, LLC, located at 5177 Richmond Avenue Suite 1230, Houston, TX 77056, Substitute Trustee to act under and by virtue of said Deed of Trust.

THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE. THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.

Mackie Wolf Zientz & Mann, P.C.
Brandon Wolf, Attorney at Law
L. Keller Mackie, Attorney at Law
Michael Zientz, Attorney at Law
Lori Liane Long, Attorney at Law
Chelsea Schneider, Attorney at Law
Ester Gonzales, Attorney at Law
Karla Balli, Attorney at Law
Parkway Office Center, Suite 900
14160 Dallas Parkway
Dallas, TX 75254

FILED

NOV 21 2023

COUNTY CLERK, TARRANT CO., TEXAS
BY_____DEPUTY

For additional sale information visit: www.mwzmlaw.com/tx-investors

Certificate of Posting

I am _____ whose address is c/o AVT Title Services, LLC, 5177 Richmond Avenue, Suite 1230, Houston, TX 77056. I declare under penalty of perjury that on _____ I filed this Notice of Foreclosure Sale at the office of the Tarrant County Clerk and caused it to be posted at the location directed by the Tarrant County Commissioners Court.

14-001526-670-8 // 100 Ascot Dr. , Southlake, TX 76092

**Electronically Recorded**

Tarrant County Texas

Official Public Records

2006 Sep 21 03:10 PM

Fee: $ 100.00

Submitter: ACS INC

**D206296193**

*Suzanne Henderson*

Suzanne Henderson

Return To:

**New Century Mortgage Corporation**
**18400 Von Karman, Ste 1000**
**Irvine, CA 92612**

GF: 2250001429

Prepared By:

**New Century Mortgage Corporation**
**18400 Von Karman, Ste 1000**
**Irvine, CA 92612**

———————————— [Space Above This Line for Recording Data] ————————————

THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT AS DEFINED BY
SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.

# TEXAS HOME EQUITY SECURITY INSTRUMENT
## (First Lien)

MIN 100488910097490253

**This Security Instrument is not intended to finance Borrower's acquisition of the Property.**

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 10, 12, 17, 19, 20 and 21. Certain rules regarding the usage of words used in this document
are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated **September 8, 2006**          ,
together with all Riders to this document.

**(B) "Borrower"** is DIANE L. DORMAN

Borrower is the grantor under this Security Instrument.

TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH
MERS

VMP®-8046(TX) (0506)     Form 3044.1 1/01
                        (rev. 10/03)
Page 1 of 18          Initials:
VMP Mortgage Solutions, Inc. (800)521-7291

D206296193

(C) **"Lender"** is **New Century Mortgage Corporation**

Lender is a **Corporation**
organized and existing under the laws of **California**
Lender's address is **18400 Von Karman, Suite 1000, Irvine, CA 92612**

Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D) **"Trustee"** is **Eldon L. Youngblood**

. Trustee's address is

**2711 North Haskell Avenue, Suite 2700 LB 25, Dallas, Texas 75204**

(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary
**under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501 -2026, tel. (888) 679-MERS.
(F) **"Note"** means the promissory note signed by Borrower and dated **September 8, 2006**
The Note states that Borrower owes Lender **ONE HUNDRED NINETY THOUSAND AND 00/100**

Dollars
(U.S. **$190,000.00**         ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **10/01/2036**
(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) **"Extension of Credit"** means the debt evidenced by the Note, as defined by Section 50(a)(6), Article
XVI of the Texas Constitution and all the documents executed in connection with the debt.
(I) **"Riders"** means all riders to this Security Instrument that are executed by Borrower. The following
riders are to be executed by Borrower [*check box as applicable*]:

☐ Texas Home Equity Condominium Rider        ☐ Other:
☒ Texas Home Equity Planned Unit Development Rider

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(M) **"Escrow Items"** means those items that are described in Section 3.
(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the

Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Extension of Credit does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Extension of Credit, and all extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described Property located in the

|  County | of | Tarrant | : |

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

**See Legal Description Attached Hereto and Made a Part Hereof**

Parcel ID Number: 06435173                                  which currently has the address of

100 ASCOT DR.                                                                            [Street]

Southlake,                                              [City], Texas **76092**          [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"; provided however, that the Property is limited to homestead

property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution. Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Extension of Credit current. Lender may accept any payment or partial payment insufficient to bring the Extension of Credit current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payment in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Extension of Credit current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.


Initials:


-8046(TX) (0506)

Page 4 of 18

Form 3044.1   1/01 ( rev. 10/03)

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Extension of Credit, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

Initials: 

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Extension of Credit.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Extension of Credit. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Extension of Credit, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Initials:

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower now occupies and uses the Property as Borrower's Texas homestead and shall continue to occupy the Property as Borrower's Texas homestead for at least one year after the date of this Security Instrument, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower's actions shall constitute actual fraud under Section 50(a)(6)(c), Article XVI of the Texas Constitution and Borrower shall be in default and may be held personally liable for the debt evidenced by the Note and this Security Instrument if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan or any other action or inaction that is determined to be actual fraud. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as a Texas homestead, the representations and warranties contained in the Texas Home Equity Affidavit and Agreement, and the execution of an acknowledgement of fair market value of the property as described in Section 27.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9. No powers are granted by Borrower to Lender or Trustee that would violate provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other Applicable Law.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such

Initials: _____

Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding which is not commenced as a result of Borrower's default under other indebtedness not secured by a prior valid encumbrance against the homestead, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or

Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Security Instrument Execution; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any person who signs this Security Instrument, but does not execute the Note: (a) is signing this Security Instrument only to mortgage, grant and convey the person's interest in the Property under the terms of this Security Instrument and to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution; (b) is not obligated to pay the sums secured by this Security Instrument and is not to be considered a guarantor or surety; (c) agrees that this Security Instrument establishes a voluntary lien on the homestead and constitutes the written agreement evidencing the consent of each owner and each owner's spouse; and (d) agrees that Lender and Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Extension of Credit Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Extension of Credit is subject to a law which sets maximum Extension of Credit charges, and that law is finally interpreted so that the interest or other Extension of Credit charges collected or to be collected in connection with the Extension of Credit exceed the permitted limits, then: (a) any such Extension of Credit charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender will make this refund by making a payment to Borrower. **The Lender's payment of any such refund will extinguish any right of action Borrower might have arising out of such overcharge.**

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail (but, by certified mail if the notice is given pursuant to Section 19) to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be

Initials: ___

-8046(TX) (0506)          Page 10 of 18          Form 3044.1   1/01 ( rev. 10/03)

deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the laws of Texas. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copies.** Borrower shall be given at the time this Extension of Credit is made, a copy of all documents signed by Borrower related to the Extension of Credit.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses, insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution

whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

   **19. Sale of Note; Change of Loan Servicer; Notice of Grievance; Lender's Right-to-Comply.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Extension of Credit is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

   Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. For example, Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution, generally provides that a lender has 60 days to comply with its obligations under the extension of credit after being notified by a borrower of a failure to comply with any such obligation. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

   It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

   All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower, or between either of them and any third party, be construed not to allow Lender 60 days after receipt of notice to comply, as provided in this Section 19, with Lender's obligations under the Extension of Credit to the full extent permitted by Section 50(a)(6), Article XVI of the Texas Constitution. Borrower understands that the Extension of Credit is being made on the condition that Lender shall have 60 days after receipt of notice to comply with the provisions of Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Section 14, and will give Lender 60 days after such notice has been received by Lender to comply. Except as otherwise required by Applicable Law, only after Lender has received said notice, has had 60 days to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by Lender to comply with its obligations under this Extension of Credit. Borrower will cooperate in reasonable efforts to correct any failure by Lender to comply with Section 50(a)(6), Article XVI of the Texas Constitution.



In the event that, for any reason whatsoever, any obligation of Borrower or of Lender pursuant to the terms or requirements hereof or of any other loan document shall be construed to violate any of the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then any such obligation shall be subject to the provisions of this Section 19, and the document may be reformed, by written notice from Lender, without the necessity of the execution of any amendment or new document by Borrower, so that Borrower's or Lender's obligation shall be modified to conform to the Texas Constitution, and in no event shall Borrower or Lender be obligated to perform any act, or be bound by any requirement which would conflict therewith.

All agreements between Lender and Borrower are expressly limited so that any interest, Extension of Credit charge or fee collected or to be collected (other than by payment of interest) from Borrower, any owner or the spouse of any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by Applicable Law.

It is the express intention of Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Note, this Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by Applicable Law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document may be reformed, by written notice from Lender, without the necessity of the execution of any new amendment or new document by Borrower.

Lender's right-to-comply as provided in this Section 19 shall survive the payoff of the Extension of Credit. The provision of this Section 19 will supersede any inconsistent provision of the Note or this Security Instrument.

**20. Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a

Initials: 

Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.**

**The lien evidenced by this Security Instrument may be foreclosed upon only by a court order. Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for Borrower in a judicial proceeding.**

**22. Power of Sale.** It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by law. Accordingly, Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court. To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Section 22 shall apply, if Lender invokes the power of sale. Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale. In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply.

 

-8046(TX) (0508)    Page 14 of 18    Form 3044.1   1/01 ( rev. 10/03)

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Within a reasonable time after termination and full payment of the Extension of Credit, Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recordation costs. **OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF LENDER'S OBLIGATIONS UNDER SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.**

**24. Non-Recourse Liability.** Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

Subject to the limitation of personal liability described below, each person who signs this Security Instrument is responsible for ensuring that all of Borrower's promises and obligations in the Note and this Security Instrument are performed.

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the Property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, then, subject to Section 12, Borrower will be personally liable for the payment of any amounts due under the Note or this Security Instrument. This means that a personal judgment could be obtained against Borrower, if Borrower fails to perform Borrower's responsibilities under the Note or this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting Borrower's other assets to satisfaction of the debt.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 24 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Note and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Note and this Security Instrument.


 

**25. Proceeds.** Borrower has not been required to apply the proceeds of the Extension of Credit to repay another debt except a debt secured by the Property or debt to another lender.

**26. No Assignment of Wages.** Borrower has not assigned wages as security for the Extension of Credit.

**27. Acknowledgment of Fair Market Value.** Lender and Borrower have executed a written acknowledgment as to the fair market value of Borrower's Property on the date the Extension of Credit is made.

**28. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**29. Acknowledgment of Waiver by Lender of Additional Collateral.** Borrower acknowledges that Lender waives all terms in any of Lender's loan documentation (whether existing now or created in the future) which (a) create cross default; (b) provide for additional collateral; and/or (c) create personal liability for any Borrower (except in the event of actual fraud), for the Extension of Credit. This waiver includes, but is not limited to, any (a) guaranty; (b) cross collateralization; (c) future indebtedness; (d) cross default; and/or (e) dragnet provisions in any loan documentation with Lender.

Unofficial

Initials: 



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]**

**YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS EXTENSION OF CREDIT WITHOUT PENALTY OR CHARGE.**

_____          _____ (Seal)
                                          DIANE L. DORMAN                -Borrower
Printed Name: _____
            *[Please Complete]*

_____          _____ (Seal)
                                                                          -Borrower
Printed Name: _____
            *[Please Complete]*

_____ (Seal)   _____ (Seal)
                      -Borrower                                           -Borrower

_____ (Seal)   _____ (Seal)
                      -Borrower                                           -Borrower

_____ (Seal)   _____ (Seal)
                      -Borrower                                           -Borrower

**STATE OF TEXAS**

County of **Tarrant**

    Before me *BillPlunk Notary*             on this day personally appeared

    *Dianne L. Dorman*

known to me (or proved to me on the oath of

or through *Texas Drivers Lic*          ) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

    Given under my hand and seal of office this    *8th*   day of  *Sept. 2006.*

(Seal)

```
Bill Plunk
Notary Public, State of Texas
My Commission Expires:
September 21, 2009
```

Notary Public

My Commission Expires: *9-21-09*

Unofficial Copy

G. F. No. 2250001429

## Exhibit A

Lot 1, Block 2, of CHAPEL DOWNS, an Addition to the City of Southlake, TARRANT County, Texas, according to the plat thereof recorded in Cabinet A, Slide 386, of the Plat Records of TARRANT County, Texas.



# TEXAS HOME EQUITY
## PLANNED UNIT DEVELOPMENT RIDER

MIN: 100488910097490253

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **8th** day of **September, 2006**, and is incorporated into and shall be deemed to amend and supplement the Security Instrument of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **New Century Mortgage Corporation**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at: **100 ASCOTT DR., Southlake, TX  76092**

[Property Address]

The property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in covenants, conditions, and restrictions filed in the Real Property records of the county in which the property is located (the "Declaration"). The property is a part of a planned unit development described in the Declaration (the "PUD"). The property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest. Insofar as permitted by Section 50(a)(6)(H), Article XVI of the Texas Constitution, "homestead" shall include the elements of the property described by this Rider.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then:

(i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the property; and

**TEXAS HOME EQUITY PLANNED UNIT DEVELOPMENT RIDER- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

(ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the property, or to common areas and facilities of the PUD, any proceeds payable to Borrower shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 10.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the property or consent to:

(i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender, if allowed by applicable law, may pay them. Any amounts disbursed by Lender under this Paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: 



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

**[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]**



_____ (Seal)
DIANE L. DORMAN       -Borrower
DIANNE

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

VMP-8037(TX) (0411)          Page 3 of 3          Form 3150.44 1/ 01

**Electronically Recorded**
Official Public Records
Tarrant County Texas

2006 Sep 21 03:10 PM
Fee: $ 40.00
Submitter: ACS INC

**D206296194**

Return To:

New Century Mo *Suzanne Henderson*
18400 Von Karman, Ste 1000
Irvine, CA 92612    Suzanne Henderson

*GF: 2250001429*

Prepared By:
**New Century Mortgage Corporation**
18400 Von Karman, Ste 1000
Irvine, CA 92612

──────── [To Be Recorded With Security Instrument. Space Above This Line for Recording Data] ────────

# TEXAS HOME EQUITY
## AFFIDAVIT AND AGREEMENT
### (First Lien)

(Do not sign this Texas Home Equity Affidavit and Agreement until you have executed an
Acknowledgment Regarding Fair Market Value, and received and reviewed the Texas Home
Equity Note and the Texas Home Equity Security Instrument.)

State of **TEXAS**

Before me, the undersigned authority, a Notary Public in and for the State of Texas, on this day personally
appeared **DIANE L. DORMAN**,

*DIANNE*

and on oath such individual, or each of them, swears that the following statements are true:

I.  **REPRESENTATIONS AND WARRANTIES:**

A.  I am a borrower named in the Texas Home Equity Note (the "Note") or the owner or spouse of an
owner of the property described in the Texas Home Equity Security Instrument (the "Security Instrument" which

**TEXAS HOME EQUITY AFFIDAVIT AND AGREEMENT (First Lien)-Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT**

VMP®-8034(TX) (0310)     Form 3185 1/ 01
                        (rev. 10/03)
Page 1 of 6           Initials: _____
        VMP Mortgage Solutions (800)521-7291

Unofficial Copy

D206296194

term includes any riders to the Texas Home Equity Security Instrument), both bearing date of **September 8, 2006**                                    , evidencing and securing an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit") and providing for a lien on the following described property (the "Property") located in **Tarrant**                                               County, Texas:
**See Legal Description Attached Hereto and Made a Part Hereof**

Parcel ID Number: **06435173**
which has the address of: **100 ASCOTT DR.**                                                                [Street]
**Southlake**                              [City], Texas **76092**          [Zip Code] ("Property Address").

        The Property includes all incidental rights in and to the Property including all improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions are included as well as any interest in a planned unit development, condominium project, homeowners' association or equivalent entity owning or managing common areas or facilities associated with the Property. All of the foregoing is referred to herein as the Property, provided however that the Property is limited to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution.
        The Property does not include any additional real or personal property not included within the definition of homestead in accordance with applicable law including but not limited to Sections 41.002(a), (b), and (c) of the Texas Property Code which provide:

>    **Section 41.002 Definition of Homestead**
>        (a) If used for the purposes of an urban home or as both an urban home and a place to exercise a calling or business, the homestead of a family or a single, adult person, not otherwise entitled to a homestead, shall consist of not more than 10 acres of land which may be in one or more contiguous lots, together with any improvements thereon.
>        (b) If used for the purposes of a rural home, the homestead shall consist of:
>            (1) for a family, not more than 200 acres, which may be in one or more parcels, with the improvements thereon; or
>            (2) for a single, adult person, not otherwise entitled to a homestead, not more than 100 acres, which may be in one or more parcels, with the improvements thereon.
>        (c) A homestead is considered to be urban if, at the time the designation is made, the property is:
>            (1) located within the limits of a municipality or its extraterritorial jurisdiction or a platted subdivision; and
>            (2) served by police protection, paid or volunteer fire protection, and at least three of the following services provided by a municipality or under contract to a municipality: (A) electric; (B) natural gas; (C) sewer; (D) storm sewer; and (E) water.

        **B.** I understand that the lender making the Extension of Credit is **New Century Mortgage Corporation** (the "Lender").

        **C.** The undersigned includes all owners and spouses of owners of the Property and all borrowers named in the Note.

Initials: _____

**D.** The Extension of Credit is secured by a voluntary lien on the Property created under a written agreement with the consent of all owners and all spouses of owners, and execution of this Texas Home Equity Affidavit and Agreement is deemed evidence of such consent.

**E.** The Extension of Credit is of a principal amount that, when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the Property, does not exceed eighty percent (80%) of the fair market value of the Property on the date the Extension of Credit is made.

**F.** I have not paid any fee or charge that is not disclosed in the HUD-1 or HUD-1A Settlement Statement.

**G.** Neither the Lender nor any other party has required any additional collateral (real or personal property), other than the Property described in the Security Instrument, to secure the Extension of Credit.

**H.** The Property is not designated for agricultural use as provided by statutes governing property tax, unless such Property is used primarily for the production of milk.

**I.** The Extension of Credit is the only loan made pursuant to Section 50(a)(6), Article XVI of the Texas Constitution that will be secured by the Property at the time the Extension of Credit is funded.

**J.** The Note and Security Instrument have not been signed before the twelfth (12th) day after the later of the date the owner of the Property submitted an application to the Lender, or the Lender's representative for the Extension of Credit, or the date that the Lender, or the Lender's representative provided the owner with a copy of the Notice Concerning Extensions of Credit defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Notice").

**K.** The Note and Security Instrument have not been signed before one business day after the date that the owner of the Property received a final itemized disclosure of the actual fees, points, interest, costs, and charges that would be charged at closing **or** a bona fide emergency or other good cause exists and the owner of the Property hereby consents to the Lender providing or modifying such final itemized disclosure on the date of the signing of the Note and Security Instrument and execution of this Texas Home Equity Affidavit and Agreement is deemed evidence of such consent.

**L.** If I am an owner of the Property, I received the Notice in English. If the discussions with the borrowers named in the Note were conducted primarily in a language other than English, the borrowers named in the Note received from Lender, or Lender's representative, before closing, an additional copy of the Notice translated into the written language in which the discussions were conducted.

**M.** The Extension of Credit is being closed, that is I am signing the loan documents, at the office of the Lender, an attorney at law, or a title company.

**N.** It has been at least one year since the closing date of any other extension of credit made pursuant to Section 50(a)(6), Article XVI of the Texas Constitution secured by the Property, unless (i) this Extension of Credit is a refinance of a prior extension of credit pursuant to Section 50(a)(6), Article XVI of the Texas Constitution, and is being made to cure the failure of any lender or holder of the prior extension of credit to comply with its obligations under the prior extension of credit (referred to here as a cure refinance) or (ii) the prior extension of credit was a cure refinance, in which case it has been at least one year since the closing date of the most recent extension of credit prior to a cure refinance.

**O.** No owner of the Property has been required to apply the proceeds of this Extension of Credit to repay another debt, unless such other debt, if any, is a debt secured by the Property or is a debt to another lender.

**P.** No owner of the Property has been required to assign wages as security for the Extension of Credit.

**Q.** No owner of the Property has signed an instrument in which applicable blanks were left to be filled in. There are no blanks in this Texas Home Equity Affidavit and Agreement, the Note, or the Security Instrument.

**R.** No owner of the Property has signed a confession of judgment or given a power of attorney to the Lender or to a third person to confess judgment or to appear for any owner of the Property in a judicial proceeding.

**S.** To the best of my knowledge and belief, all owners of the Property, after receiving a copy of all documents signed by them, will sign a receipt acknowledging the delivery of such copies.

**T.** I have been notified in the Security Instrument of the right of the owner and the spouse of any owner to rescind the Extension of Credit without penalty or charge within three (3) days after the closing.

**U.** The Lender and each owner of the Property have signed a written acknowledgment as to the fair market value of the Property on the date the Extension of Credit is made.

V. The Property is not being purchased with any part of the proceeds of the Extension of Credit.

W. Unless Lender otherwise agrees in writing, all borrowers named in the Note shall occupy the Property as their homestead pursuant to the terms of the Security Instrument.

X. I understand that the Extension of Credit is not a form of open-end account that may be debited from time to time or under which credit may be extended from time to time. Lender, at its option, may make monetary advances to protect the Property (i.e. pay real estate taxes, hazard insurance payments, etc.) in accordance with the Security Instrument.

Y. I understand that the Note, Security Instrument, and this Texas Home Equity Affidavit and Agreement define the terms of the Extension of Credit and are to be construed as an entirety.

## II.   AGREEMENT PROVISIONS:

**A. No Personal Liability in the Absence of Actual Fraud.** I understand that pursuant to Section 50(a)(6)(C), Article XVI of the Texas Constitution the Extension of Credit is without recourse for personal liability against each owner of the Property and the spouse of each owner and that Lender and its successors and assigns can enforce the promises and obligations in the Note and the Security Instrument solely against the Property, unless an owner or spouse of an owner obtains the Extension of Credit by actual fraud.

**B. Inducement and Reliance.** I understand that my execution of this Texas Home Equity Affidavit and Agreement is made to induce Lender and its successors and assigns to make or purchase the Extension of Credit, and that Lender and its assigns will rely on it as additional consideration for making or purchasing the Extension of Credit. I also understand that each of the statements made in the Representations and Warranties Section is material and will be acted upon by the Lender and its assigns, and that if such statement is false or made without knowledge of the truth, the Lender and its assigns will suffer injury.

**C. Remedies in the Event of Actual Fraud.** If any owner of the Property, or the spouse of an owner, obtains the Extension of Credit by actual fraud, then each owner, spouse of each owner and all borrowers named in the Note agree to indemnify and save Lender and its successors and assigns harmless against any loss, costs, damages, attorneys' fees, expenses and liabilities which Lender may incur or sustain in connection with such actual fraud and any court action arising therefrom and will pay the same upon demand. In addition, the borrowers named in the Note may become personally liable for repayment of the Extension of Credit.

**D. Opportunity for Lender to Comply.** It is agreed that, except as required by law, the Lender or any holder of the Note for the Extension of Credit shall not forfeit any principal or interest on the Extension of Credit by reason of failure by Lender or holder to comply with its obligations under the Extension of Credit, unless the Lender or holder of the Note fails to correct the failure to comply not later than the 60th day after the borrower notifies the Lender or holder of the Note of its failure to comply.

**E. Tax Advice.** It is agreed that it is the borrower's responsibility to determine any and all aspects of tax considerations related to the Extension of Credit. I have not relied on any tax advice provided by Lender or Lender's representatives. It is my responsibility to seek and obtain independent tax advice.

### III. STATEMENT UNDER OATH

I hereby swear under oath that the representations and warranties referred to and set forth in Section I above are true and correct. I understand that this Texas Home Equity Affidavit and Agreement is part of the Extension of Credit documentation.

**[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS TEXAS HOME EQUITY AFFIDAVIT AND AGREEMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW, OR A TITLE COMPANY BY ALL OWNERS OF THE PROPERTY, SPOUSES OF OWNERS, AND BORROWERS NAMED IN THE NOTE. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]**

_____
(Borrower or Owner or Spouse of Owner)
~~DIANE L. DORMAN~~
DIANNE DD

_____
(Borrower or Owner or Spouse of Owner)

_____
(Borrower or Owner or Spouse of Owner)

_____
(Borrower or Owner or Spouse of Owner)

_____
(Borrower or Owner or Spouse of Owner)

_____
(Borrower or Owner or Spouse of Owner)

_____
(Borrower or Owner or Spouse of Owner)

_____
(Borrower or Owner or Spouse of Owner)

Unofficial Copy

SWORN TO AND SUBSCRIBED before me on this

By: Dianne L. Dorman
[PERSONALIZED SEAL]

8th day of Sept, 2006

_____
Notary Public

Bill Plunk
Printed Name of Notary
My Commission Expires:   9-21-09

Bill Plunk
Notary Public, State of Texas
My Commission Expires:
September 21, 2009

### ADVISORY NOTICE

ALL STATEMENTS IN THE FOREGOING TEXAS HOME EQUITY AFFIDAVIT AND AGREEMENT ARE MADE UNDER OATH. IF ANY SUCH STATEMENT IS MADE WITH KNOWLEDGE THAT SUCH STATEMENT IS FALSE, THE PERSON MAKING SUCH FALSE STATEMENT MAY BE SUBJECT TO CIVIL AND CRIMINAL PENALTIES UNDER APPLICABLE LAW, MAY BE PERSONALLY LIABLE ON THE NOTE AND MAY CAUSE ALL OTHER BORROWERS NAMED IN THE NOTE TO BE PERSONALLY LIABLE ON THE NOTE.

Initials:

VMP -8033(TX) (0910)

Page 6 of 6

Form 3185   1/01 (r ev.10/ 03)

G. F. No. 2250001429

# Exhibit A

Lot 1, Block 2, of CHAPEL DOWNS, an Addition to the City of Southlake, TARRANT County, Texas, according to the plat thereof recorded in Cabinet A, Slide 386, of the Plat Records of TARRANT County, Texas.



Exhibit A Legal Description (Short)                    Page 1 of 1                                            Rev. 7/03

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **DIANNE DORMAN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No.** |
| **DEUTSCHE BANK NATIONAL TRUST** | § | |
| **CO., AS TRUSTEE FOR SECURITIZED** | § | |
| **ASSET BACKED RECEIVABLES LLC** | § | |
| **TRUST 2007-NC1, MORTGAGE PASS-** | § | |
| **THROUGH CERTIFICATES, SERIES** | § | |
| **2007-NC1 and PHH MORTGAGE** | § | |
| **CORPORATION,** | § | |
| | § | |
| **Defendants.** | § | |

**DECLARATION OF MARK D. CRONENWETT**

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the following statements are true and correct:

1.      My name is Mark D. Cronenwett. I am over the age of 21 years and am fully competent to make this declaration.  All statements of fact made herein are true, correct, and within my personal knowledge.

2.      I am an attorney with Mackie Wolf Zientz & Mann, P.C., attorneys for Deutsche Bank National Trust Co., as Trustee for Securitized Asset Backed Receivables LLC Trust 2007-NC1, Mortgage Pass-Through Certificates, Series 2007-NC1 and PHH Mortgage Corporation ("Defendants").

3.      On January 8, 2024, I searched for the Tarrant County Appraisal District's valuation of the property located at 100 Ascot Dr., Southlake, Texas 76092 (the "Subject Property").  I found the appraisal record for the Subject Property.

4.      I certify the following document attached hereto is a true and correct copy of the original, which I obtained from the Appraisal District web-site for Tarrant County.   This document is identified as an exhibit to this Declaration as indicated below,

C-1      Print out from the Tarrant County Appraisal District web-site on January 8, 2024.

5.      This document is incorporated by reference for all purposes.

FURTHER DECLARANT SAYETH NOT.

SIGNED AND DECLARED on January 8, 2024.

_____
**MARK D. CRONENWETT**

# EXHIBIT C-1

**Year Built:** 1995
**Agent Authority:** O'CONNOR & ASSOCIATES
**Agent Number:** 11730
**Site Number:** 06435173
**Site Name:** CHAPEL DOWNS ADDITION-2-1
**Site Class:** A1 - Residential - Single Family
**Number of Parcels:** 1
**Building SQFT:** 3,659
**Percentage Complete:** 100%
**Land Sqft:** 20,661
**Land Acres:** 0.4743
**Pool:** None

Property Value    Geolocation    Taxing Units    Ownership    Exemptions    Documents

## 5 Years historical Value

| Year | Land Appr. | Imprv. Appr. | Total Appr. | Land Mkt. | Imprv. Mkt. | Total Mkt. |
|------|-----------|--------------|-------------|-----------|-------------|------------|
| 2024 | N/A | N/A | N/A | N/A | N/A | N/A |
| 2023 | $355,725 | $449,687 | $805,412 | $355,725 | $461,985 | $817,710 |
| 2022 | $237,150 | $495,043 | $732,193 | $237,150 | $557,255 | $794,405 |
| 2021 | $110,000 | $555,630 | $665,630 | $110,000 | $555,630 | $665,630 |
| 2020 | $110,000 | $499,005 | $609,005 | $110,000 | $499,005 | $609,005 |
| 2019 | $110,000 | $501,444 | $611,444 | $110,000 | $501,444 | $611,444 |

 **Information:** Information relating to the current year should be considered a "work in progress". Prior year data is informational only and does not necessarily replicate the values published by Tarrant County Tax Office. The information provided is purely for ad valorem taxation purposes.

## Explore

News

Events

Search Our Site

## Services

Online Account

All Forms

Property Search

FAQ's

## About Us

Our Mission and Values

Leadership

11730



**TARRANT**
APPRAISAL REVIEW
BOARD

Date of Notice: 8/23/2023

9207 1969 0054 5900 0760 9065 38

CHANDLER CROUCH
9500 RAY WHITE RD 2ND FLOOR
FT WORTH TX 76244

## AGREED ORDER DETERMINING PROTEST OR MOTION FOR CORRECTION OF APPRAISAL ROLL

Tarrant Appraisal Review Board (TARB) received a protest or motion for correction of appraisal roll regarding the property identified below. The property owner or the property owner's authorized agent and the TAD filed a joint motion pursuant to §41.47(g-1) of the Texas Tax Code notifying the TARB that the parties had agreed to a disposition of the protest or motion and requesting an agreed order. After considering the parties' joint motion, the TARB, acting through its Chairperson orders that TAD change the records or rolls as necessary to reflect the agreed disposition of the protest or motion. All relief not granted in this order for the tax year(s) below and for the grounds determined as identified below is denied.

Account Number:                    06435173
Owner's Name of Record:            DORMAN DIANNE LOUISE
Property Address of Record:        100 ASCOT DR, SOUTHLAKE TX 76092
Legal Description of Record:       CHAPEL DOWNS ADDITION Block 2 Lot 1

| Tax Year | Case Number | Grounds of Protest or Motion for Correction | Pre-Hearing Value<br>Land / Improvement / Total ** | Agreed Determination*<br>Land / Improvement / Total ** |
|---|---|---|---|---|
| 2023 | 23-628158 | Joint Motion 41.47(g-1) | LAND: $355,725<br>IMPR: $541,508<br>TOTL: $897,233 | LAND: $355,725<br>IMPR: $461,985<br>TOTL: $817,710 |

* If TARB determined both "Incorrect appraised (market) value" and "Value is unequal compared with other properties", the value finally determined by TARB is the lower of the two.   ** There are no land or improvement values for personal property and mineral accounts.

## Notice of Agreed Order

A PROPERTY OWNER HAS A RIGHT TO APPEAL IN DISTRICT COURT AN APPRAISAL REVIEW BOARD ORDER DETERMINING A PROTEST AS PROVIDED BY TEXAS TAX CODE CHAPTER 42.  TO APPEAL SUCH AN ORDER TO DISTRICT COURT, A PARTY MUST FILE A PETITION FOR REVIEW WITH THE DISTRICT COURT WITHIN 60 DAYS AFTER THE PARTY RECEIVES NOTICE THAT A FINAL ORDER HAS BEEN ENTERED FROM WHICH AN APPEAL MAY BE HAD OR AT ANY TIME AFTER THE HEARING BUT BEFORE THE 60-DAY DEADLINE.  A PROPERTY OWNER ALSO HAS A RIGHT TO APPEAL IN DISTRICT COURT A DETERMINATION OF AN APPRAISAL REVIEW BOARD ON A MOTION FILED UNDER TAX CODE SECTION 25.25.  THE LAW PROVIDES THAT TO FILE SUIT TO COMPEL AN APPRAISAL REVIEW BOARD TO ORDER A CHANGE IN THE APPRAISAL ROLL UNDER TAX CODE SECTION 25.25, A PARTY MUST FILE SUIT WITHIN 60 DAYS AFTER THE PARTY RECEIVES NOTICE OF THE APPRAISAL REVIEW BOARD'S DETERMINATION OF A MOTION UNDER TAX CODE SECTION 25.25 OR A DETERMINATION THAT THE PROPERTY OWNER HAS FAILED TO COMPLY WITH THE PRE-PAYMENT REQUIREMENTS.  FAILURE TO TIMELY FILE A PETITION BARS AN APPEAL TO DISTRICT COURT.

A PARTY OTHER THAN A PROPERTY OWNER, IN ORDER TO EXERCISE THE PARTY'S RIGHT TO APPEAL AN AGREED ORDER, MUST FILE A WRITTEN NOTICE OF APPEAL WITHIN 15 DAYS AFTER THE DATE THE PARTY RECEIVES THIS NOTICE OR, IN THE CASE OF A TAXING UNIT, WITHIN 15 DAYS AFTER THE DATE THE TAXING UNIT RECEIVES NOTICE PURSUANT TO TAX CODE SECTION 41.07.

For more information regarding appeal to district court, you should consult Tax Code Chapter 42 and the clerk of the court. If you need legal advice, you should consult an attorney.

As an alternative to filing an appeal to district court, a property owner may appeal through binding arbitration an order determining a protest filed under Tax Code Section 41.41(a)(1) or (2) concerning the appraised or market value of property if:

> (1) the property qualifies as the owner's residence homestead under Tax Code Section 11.13; or
> (2) the appraised or market value, as applicable, of the property as determined by the order is $5 million or less.

To appeal an order through binding arbitration, a property owner must file with the appraisal district not later than the 60th day after the date the property owner receives notice of the order:

> (1) a completed request for binding arbitration, a copy of which is enclosed with this notice, and
> (2) an applicable arbitration deposit made payable to the Comptroller in the amount provided under Tax Code Chapter 41A.                .

For more information regarding appeal through binding arbitration, you should consult Texas Tax Code Chapter 41A and Comptroller Rule 9.4251-9.4266. If you need legal advice, you should consult an attorney.

As an alternative to filing an appeal to district court, certain property owners may appeal to the State Office of Administrative Hearings (SOAH) an order determining a protest concerning the appraised or market value of property brought under Tax Code Section 41.41(a)(1) or (2) if the appraised or market value, as applicable, of the property that was the subject of the protest, as determined by the appraisal review board order, is more than $1 million.

To appeal an order to SOAH, a property owner must file with the chief appraiser of the appraisal district not later than the 30th day after the date the property owner receives notice of the order:

> (1) a completed notice of appeal to SOAH, a copy of which is enclosed with this notice, and
> (2) not later than the 90th day after the date the property owner receives the notice of order a deposit of $1,500
>     made payable to SOAH must be filed with the appraisal district.

For more information regarding appeal to SOAH, you should consult Government Code Chapter 2003 and related SOAH rules. If you need legal advice, you should consult an attorney.

It is important to note that the pendency of an appeal, whether to district court, through binding arbitration or to SOAH, does not affect the delinquency date for the taxes on the property subject to the appeal. For more specific information, consult the applicable statutes and rules.

An order issued under §41.47(g-1) of the Tax Code may be appealed only if the joint motion agreed to by the property owner and the TAD states that the order may be appealed.