IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS,
FORT WORTH DIVISION

| | |
|---|---|
| **DIANNE DORMAN,** § | |
| § | |
| Plaintiff/Counter-Defendant, § | |
| § | |
| V. § | |
| § | |
| **DEUTSCHE BANK NATIONAL TRUST** § | |
| **COMPANY AS TRUSTEE FOR** § | **CIVIL ACTION NO. 4:24-CV-00024** |
| **SECURITIZED ASSET BACKED** § | |
| **RECEIVABLES LLC TRUST 2007-NCI,** § | |
| **MORTGAGE PASS-THROUGH** § | |
| **CERTIFICATES, SERIES 2007-NCI &** § | |
| **PHH MORTGAGE SERVICING,** § | |
| § | |
| Defendants/Counter-Plaintiffs. § | |

## PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Dianne Dorman, ("Plaintiff(s)"), and serves this, Plaintiff's Original Petition against Defendants, DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-NCI, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-NCI and PHH MORTGAGE CORPORATION ("Defendant(s)"), and in support thereof, would respectfully show the Court as follows:

I.
Discovery Level

1. Discovery of this matter shall be conducted pursuant to Level 3 pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

II.
Parties

2. Plaintiff, Dianne Dorman is the owner of the residence located at 100 Ascot Dr., Southlake, Texas 76092 (the Residence). Plaintiffs may receive all correspondence and filings via their attorney of record herein.

3. Defendant, DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-NCI, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-NCI is a trust for holding mortgage-backed securities for which U.S. Bank National Association is the Trustee and conducts business in Tarrant County, Texas and is the current mortgagee per Defendant's publicly filed foreclosure notice. **Defendant does not have a registered agent listed and therefore may be served through the secretary of state.**

4. Defendant, PHH MORTGAGE CORPORATION is a mortgage servicer located at 1661 WORTHINGTON RD STE 100 C/O MAIL STO WEST PALM BEACH, FL 33409-6493 and conducts business in Tarrant County, Texas. **Defendant may be SERVED through its registered agent, CORPORATION SERVICE COMPANY DBA CSC - LAWYERS INCO at 211 E. 7TH STREET SUITE 620 AUSTIN, TX 78701.**

## III.
## Venue

5. Venue is proper in Tarrant County, Texas, as that all or a substantial part of the events or omissions giving rise to the claim occurred in Tarrant County, Texas and it involves real property located in Tarrant County, Texas.  Tex. Civ. Prac. & Rem. Code §15.002(a) and §15.011.

## IV.
## Facts

6. Dianne Dorman, Plaintiff, is the owner of the Residence located at 100 Ascot Dr., Southlake, Texas 76092, which is also plaintiff's homestead. (the "Residence").

7. Ms. Dorman bought this house in 2005 with mostly cash for $345,000.00, but only needed a loan of $70,000.00. It is now worth about $980,000.00, conservatively.

8. She did complete a Texas Home Equity Loan refinance a year later, raising her mortgage from $70,000.00 to $190,000.00. She has not done another refinance or equity loan since.

9. Up until earlier this year, Ms. Dorman was a corporate executive making very good money, but got into a tragic car accident that caused a brain injury, and she hasn't been able to get back to her previous job yet. She is currently making about $80,000.00 per year on disability.

10. Ms. Dorman has been fighting with her lender for some time now. Specifically, payments were sent in back in 2014 and 2015 that have never been applied to her loan. There are also inconsistencies between what the Defendants reported to the IRS as being paid by Plaintiff and what Defendants have advised Plaintiff that she has paid. Specifically, Defendants have reported payments being made to the IRS but then claim that Plaintiff has not made those very same payments to Plaintiff.

11. Additionally, the lender placed insurance on her mortgage when she was already paying for her homeowner's insurance and taxes, per her contract with the lender. She never received any notice that this was going to happen before it had already turned into a big problem for her.

12. Defendants are also now claiming that she owes them $700,000.00, which is impossible by Plaintiff's calculations, and which is why Plaintiff is requesting that an accounting be ordered. This is especially concerning since in 2016, after winning an adversary proceeding in bankruptcy against her lender at the time, she was advised she owed $185,000.00.

13. Ms. Dorman never received a 20-Day Notice to Cure, nor did she received a Notice of Acceleration advising her of the January 2nd, 2024 foreclosure date.  She only found out about it because of Investors wanting to buy her home.

14. Ms. Dorman should owe approximately $180,000.00, despite Defendant's claim that she owes $700,000.00.  Since her home is worth approximately $980,000.00, she has approximately $800,000.00 in equity that she could lose if her home is allowed to go to foreclosure.

15. All facts stated herein are verified under penalty of perjury per the signed unsworn verification block below.

## V.
## Causes of Action

**A.     *20-Day Notice to Cure AND Notice of Acceleration Not Sent to Plaintiff***

16. All facts and allegations set forth above are incorporated by reference herein for all purposes.

17. The power of acceleration is a harsh remedy and calls for close scrutiny. *See Vaughan v. Crown Plumbing & Sewer Serv., Inc., 523 S.W. 2d 72, 75 (Tex. Civ. App. – Houston (1st Dist.) 1975, writ ref'd n.r.e.).*  The exercise of the right of acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration. *Shumway v. Horizon Credit Corp., 801 S.W.2d 890, 892 (Tex. 1991); and see Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 569–570 (Tex. 2001).*  Both notices must be "clear and unequivocal".  *Id.* at 893 and 566.  Finally, whether the right of acceleration was exercised is a fact question. *Holy Cross Church of God v. Wolf at 568.*

18. Under Texas Property Code Chapter 51 any debtor who, according to the records of the mortgage servicer, is obligated to pay the debt must be served with a valid and correct written notice to cure and notice of the trustee's sale by certified mail. See *Tex. Prop. Code* § 51.002.

19. Failure to give the required notices is sufficient to cause a court to set aside the foreclosure sale. See *Bauder v. Alegria*, 480 S.W.3d 92, 98 & n.8 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Shearer v. Allied Live Oak Bank,* 758 S.W.2d 940, 942 (Tex. App.—Corpus Christi 1988, writ denied).

20. In the case of a contractual lien on real property used as the debtor's residence, the debtor is entitled to a 20-day window of opportunity to cure any default before the mortgage servicer may provide notice of sale of the residence.  *Tex. Prop. Code Sect. 51.002.*  Accordingly, the mortgage servicer must provide written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien, and must give the debtor at least 20 days to cure the default before a subsequent notice of sale can be given [*Tex. Prop. Code § 51.002(d)*; *Bauder v. Alegria, 480 S.W.3d 92, 97–98 & n.8 (Tex. App.—Houston [14th Dist.] 2015, no pet.)* (when notice to cure and notice of foreclosure were sent to wrong address, trial court properly set aside foreclosure sale).

21. As attested to in the sworn facts herein, Plaintiff never received anything resembling a 20-day notice to cure, nor did Plaintiff receive the Notice of Substitute Trustee Sale.  Because they were not received by Plaintiff, it is likely true that they were not sent by the Defendant, and Defendant should be required to provide proof that they were in fact sent, according to the requirements under the Texas Property Code, as outlined above.

22. Therefore, because the 20-day notice to cure NOR the 21-day notice of acceleration were not received by Plaintiff, Plaintiff alleges that they was not sent, according to the Plaintiff's sworn testimony herein, Plaintiff seeks declaratory relief that Defendant/Lender is not entitled to foreclose and requests that this court grant the request for a Temporary Restraining Order.

## B.     *TDCA Violations*

23. All facts and allegations set forth above are incorporated by reference herein for all purposes.

24. The Texas Debt Collection Act (the "TDCA") is the Texas counterpart to the Federal Debt Collect Practices Act (the "FDCPA") and is found at TEX. FIN. CODE § 392.001 et. Seq.

25. The TDCA provides remedies for wrongful debt collection practices used by a debt collector in debt collection. See Tex. Fin. Code§§ 392.001-.404; see also Ford v. City State Bank of Palacios, 44 S.W.3d 121, 135 (Tex. App.-Corpus Christi 2001, no pet.).

26. "Debt collection" is defined as the act or practice "in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." Tex. Fin. Code § 392.001(5).

27. Defendants violated the TDCA. See Tex. Fin. Code § 392.001 et seq.

28. To state a claim for a TDCA violation, the plaintiff is required to show that the defendant: (1) is a debt collector; (2) committed a wrongful act in violation of Tex. Fin. Code § 392.01 et seq.; (3) against the plaintiff; and (4) as a result, the plaintiff was injured. See McCaig v. Wells Fargo Bank (Texas), NA., 788 F.3d 463, 480-81 (5th Cir. 2015) ("[t]he statutory text [of the TDCA] contains no intent requirement . . . as suggested by the statute's plain text, district courts have recognized that facially innocuous misrepresentations made in the course of an attempt

to collect a debt constitute a violation of [the TDCA ]."); see also Catherman v. First State Bank, 796 S.W.2d 299, 302 (Tex. App.-Austin 1990, no writ).

29. The debt in question relating to Plaintiffs' home is a "consumer debt" within the meaning of such statute because the debt is an obligation for personal, family, or household purposes. Tex. Fin. Code § 392.001(1), (2). Furthermore, Plaintiffs are "consumers" within the meaning of Tex. Fin. Code § 392.001.

30. A "debt collector" is "a person who directly or indirectly engages in debt collection." Id. § 392.001(6). This definition also includes a mortgage servicer. See Miller v. BAC Home Loans Servicing, LP, 726 F.3d 717, 723 (5th Cir. 2013). Defendants, therefore, are debt collectors.

31. Defendants' acts and omissions as alleged supra constitute TDCA violations. The TDCA provides that, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices:

    a.    (8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding. Tex. Fin. Code Ann.§ 392.304(a)(8).

    b.    (19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer. Tex. Fin. Code § 392.304(a)(19).

32. Section 392.304(a)(19) is a catch-all provision that prohibits debt collectors from "using any other false representation or deceptive means to collect a debt or obtain information concerning

7

a consumer." *Birchler v. JPMorgan Chase Bank*, No. 4:14-CV-81-ALM, 2015 WL 1939438, at *5 (E.D. Tex. Apr. 29, 2015).

33. The Fifth Circuit Court of Appeals has acknowledged that even if a loan is in default, a lender may still violate § 392.301. "In determining whether foreclosure would be prohibited by law, however, what matters is whether the mortgagor has a right to foreclose, not whether the debt is considered in default." *McCaig v. Wells Fargo Bank (Texas), NA.,* 788 F.3d 463, 478 (5th Cir. 2015).

34. The Supreme Court of Texas has also opined that a party can recover injunctive relief and actual damages that are a "reasonably foreseeable result of the wrongdoer's conduct." Brown v. Oaklawn Bank, 718 S.W.2d 678, 680 (Tex. 1986). The Northern District has noted "that Brown suggests that the harm claimed must have been merely a 'reasonably foreseeable result' of alleged misconduct under the TDCA [but] it does not require that the harm be the sole result of a defendant's acts." Clark v. Deutsche Bank Nat'l Tr. Co., 3:14-CV-3590-B, 2016 WL 931216, at *7 (N.D. Tex. Mar. 11, 2016)(emphasis added). Thus, the causation standard for a TDCA violation is akin to the "producing cause" standard set forth in the Deceptive Trade Practices Act. See Tex. Bus. & Com. Code § 17.S0(a); Prudential Ins. Co. of Am. v. Jefferson Associates, Ltd., 896 S.W.2d 156, 161 (Tex. 1995).

35. Actual damages recoverable under the TDCA include damages for mental anguish and do not first require a showing of physical injury. Ledisco Fin. Servs. v. Viracola, 533 S.W.2d 951, 957 (Tex. App.-Texarkana 1976, no writ.); Monroe v. Frank, 936 S.W.2d 654, 661 (Tex. App.-Dallas 1996, writ dism'd).

36. Also, pursuant to Tex. Fin. Code § 392.403, Plaintiff is entitled to recover his attorneys' fees reasonably related to the amount of work performed and costs for all actions in the trial court and on appeal.

37. Plaintiffs maintain that Defendants violated § 392.304(a) subsections (8) and (19) when:

    a. It attempted to foreclose without having sent out the required notices;

    b. It did not, and still has not, applied payments made to it in 2014 and 2015;

    c. It reported to the IRS different payments and interest paid than what it represented to the Plaintiff had been paid;

    d. It assessed forced placed insurance in violation of federal law and when Plaintiff had her own property insurance already in place.

38. As a result of Defendants' TDCA violations, Plaintiff suffered severe mental anguish and emotional distress. Plaintiff is constantly worried and confused about the status of the loan. They also lost time away from work and suffered the inconvenience of having to resolve the matter. Therefore the court should order that Defendants violated the TDCA through their servicing of the loan and their attempted wrongful foreclosure and should be restrained from proceeding with foreclosure.

C.   *Violation of RESPA Regulation X – Sec. 1024.37 Force-placed insurance*

39. All facts and allegations set forth above are incorporated by reference herein for all purposes.

40. Regulation X – Section 1024.37 regulates when and how a lender or servicer may obtain hazard insurance on behalf of the borrower.

41. Section (b) states: "A servicer may not assess on a borrower a premium charge or fee related to force-placed insurance unless the servicer has a reasonable basis to believe that the borrower has failed to comply with the mortgage loan contract's requirement to maintain hazard insurance."

42. Further, under section (c)(1), the servicer or lender must:

    a. "(i) Deliver to a borrower or place in the mail a written notice containing the information required by paragraph (c)(2) of this section at least 45 days before a servicer assesses on a borrower such charge or fee;

    b. (ii) Deliver to the borrower or place in the mail a written notice in accordance with paragraph (d)(1) of this section; and

    c. (iii) By the end of the 15-day period beginning on the date the written notice described in paragraph (c)(1)(ii) of this section was delivered to the borrower or placed in the mail, not have received, from the borrower or otherwise, evidence demonstrating that the borrower has had in place, continuously, hazard insurance coverage that complies with the loan contract's requirements to maintain hazard insurance."

43. Plaintiff alleges that the Defendant violated this section of the federal code by not depositing the required notices into the mail because she does not remember ever receiving any such notices. Then, after the insurance was placed, and Plaintiff advised Defendant of the error, and fought with them to correct it, for many years now, Defendant still has not corrected the error. This illegally force placed insurance is the only reason Plaintiff ever fell behind on her

payments and has been the issue she has been trying to get the Defendant to acknowledge and correct all this time.

44. Therefore, as alleged herein, the Defendants did not comply with the requirements of the above noted section by providing Plaintiff with any of the required notices or reminders.  In fact, had they, they would have been advised that Plaintiff already had insurance on the property.

45. Because this force-placed insurance is a major contributing factor to Plaintiff's default, Plaintiff humbly requests that Defendant be required to pay all damages and provide all remedied available to Plaintiff under the violated regulation.

## VI.
## Plaintiff/Counter-Defendant's ANSWER to
## Defendants/Counter-Plaintiff's Original Counterclaim

46. Plaintiff/Counter-Defendant denies the allegations in Defendants Counterclaim paragraph 41. Specifically, per the tracking number provided in Defendants/Counter-Plaintiffs exhibits, the Notice of Default was "returned to sender" the day after it arrived at the distribution facility, indicating there was some type of error caused by the Defendants/Counter-Plaintiffs that kept it from ever being delivered to Diane Dorman.  Furthermore Defendants/Counter-Plaintiffs have stated in a recent bankruptcy filing a completely different amount past due and current due date for the loan, and based on that, the allegation that the loan is currently due for November 1, 2010 is denied.

47. Plaintiff/Counter-Defendant denies the allegations in Defendants Counterclaim paragraph 42. Specifically, as far as Plaintiff can tell from the documents served on her, Defendants/Counter-

Plaintiffs attached only the cover letter for the Notice of Acceleration and Maturity to their Answer and did not include any tracking information.

48. Plaintiff/Counter-Defendant denies the allegations in Defendants Counterclaim paragraph 43 because Defendants/Counter-Plaintiffs have NOT complied with all requirements to enforce their security agreement. Specifically, Defendants/Counter-Plaintiffs either sent a deficient notice of default, or did not sent one at all, and they also have not provided evidence that they sent the Notice of Acceleration of Loan Maturity to Diane Dorman.

49. Plaintiff/Counter-Defendant denies the allegations in Defendants Counterclaim paragraph 44.

50. Plaintiff/Counter-Defendant denies the allegations in Defendants Counterclaim paragraph 45.

51. Plaintiff/Counter-Defendant denies the allegations in Defendants Counterclaim paragraph 46.

52. Plaintiff/Counter-Defendant denies the allegations in Defendants Counterclaim paragraph 47.

53. Paragraphs 48 and 49 are not claims and therefore cannot be denied or admitted.

54. Plaintiff/Counter-Defendant denies the allegations in Defendants Counterclaim paragraph 50 because they do not currently have the legal right to enforce the Note and Security Instrument due to their failure to comply with Texas and Federal law.

## VII.
## Remedies and Damages

*Accounting*

55. A request for an accounting is an equitable remedy used to determine the amount of damages. *See Hutchings v. Chevron U.S.A., Inc.,* 862 S.W.2d 752, 762 (Tex. App.-El Paso 1993, writ denied). **It is a flexible, equitable remedy that may apply in various scenarios according to**

*the sound discretion of the trial court. See, e.g., Gifford v. Gabbard,* 305 S.W.2d. 668, 672 (Tex. Civ. App.-El Paso 1957, no writ); *Southwest Livestock & Trucking Co.,* 884 S.W.2d 805, 810 (Tex. App.-San Antonio 1994, writ denied).

56. Plaintiff requests an Order for an accounting of all transactions on the mortgage loan.

*Attorney's Fees*

57. Based upon the foregoing, Plaintiff requests recovery from Defendants, pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code, as well as pursuant to several laws cited and quoted above, for all costs and reasonable and necessary attorneys' fees incurred herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems necessary and just.

## VIII.
## Conditions Precedent

58. All conditions precedent to Plaintiff's recovery on all claims and damages have been performed or have occurred.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

a. Compensatory damages be awarded within the jurisdictional limits of the Court;
b. Pre-judgment and post-judgment interest as provided by law;
c. Exemplary damages as requested herein or as determined by the Court; and
d. Such other and further relief, both general and special, to which Plaintiff may be justly entitled, whether at law or in equity.

Respectfully submitted,

LAW OFFICES OF Ryan Daniel

By: /s/ Ryan Daniel
      Ryan Daniel
      State Bar No. 24090604
      1525 US Hwy 380, Suite 500 #102
      Frisco, TX 75033
      ryan@ryandaniellaw.com
      (469)-688-0621
**ATTORNEY FOR PLAINTIFF**